IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEBORAH FIRMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-3785 |
| | § | |
| BECON CONSTRUCTION COMPANY, | § | |
| INC., BECON PERSONAL ACCIDENT | § | |
| INSURANCE PLAN/502,[1] and | § | |
| LIFE INSURANCE COMPANY OF | § | |
| NORTH AMERICA, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending are Defendants' Motion for Summary Judgment (Document No. 23) and the Cross Motion for Summary Judgment of Plaintiff Deborah Firman (Document No. 53). After having considered the motions, responses, the applicable law, and the administrative record, the Court concludes as follows.

## I. Background

Plaintiff Deborah Firman claims, pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), that Defendant Life Insurance Company of North America ("LINA")[2] wrongly denied her the

---

[1] Plaintiff originally named Becon Group Life and Insurance Plans 054 & 052, and the correct name is hereby substituted. *See* Footnote 3 below.

[2] LINA is a CIGNA company; hence, some portions of the administrative record refer to LINA as CIGNA, or contain CIGNA headers. *See* Document No. 23 at 8, Document No. 48 at 7. Because

benefits of her common-law husband's ERISA-governed Group Accident Policies.  Her husband, Gilberto Espinoza, an employee of Houston-based Defendant Becon Construction Company, Inc. ("Becon"), participated in two accidental death and dismemberment policies under the Becon Personal Accident Insurance Plan/502 (the "Plan")[3]: Group Accident Policy OK 826455 issued to Becon by LINA and LINA Voluntary Personal Accident Insurance Group Policy OK 822833 (together, the "Policies"),[4] both of which named Plaintiff as the beneficiary.[5]  Becon was the ERISA Plan sponsor and administrator under the plan,[6] but designated LINA as the claims administrator,[7] and both policies conferred upon LINA "full discretionary authority to administer and interpret" both policies.[8]

Both Policies state that benefits will be paid for "loss from bodily injuries . . . caused by an accident which happens while an

the parties do not treat CIGNA as separate from LINA, the Court for simplicity will use only the initials LINA.

[3] Defendants assert, and Plaintiff does not contest, that the defendant Plan was improperly named in the Complaint as "Becon Group Life Insurance Plan 052" and that Becon Group Life Insurance Plan 054 was named in error.  *See* Document No. 23 at 1.

[4] Document No. 1 at 3 (Orig. Cmplt.); Document No. 23, ex. A at 55, 71, 246-296 [hereinafter "Admin. Record"].

[5] Admin. Record at 172-73.

[6] Id. at 55, 71.

[7] Id. at 40, 68.

[8] Id. at 54, 71.  It is uncontested that the Plan's Summary Plan Description confers discretion upon LINA.  *See* Document No. 1 at 7 (Orig. Cmplt.); Document No. 23 at 4 (LINA).

insured is covered by this policy."[9]   Neither policy, however, contains a definition of the term "accident."

A.   Insured's Death

Espinoza died in a single-vehicle crash in Kentucky on September 20, 2008. His blood and urine alcohol content were 0.20 percent and 0.35 percent, respectively, at the time of his death,[10] and the investigating officer reported a "strong odor of alcohol" and "an open container of cold Budlight Beer inside the vehicle" upon his arrival.[11]   According to the officer's report, Espinoza's truck veered off the roadway to the right upon entering a left curve; Espinoza overcorrected, sending the truck over the road onto the left shoulder, where it rolled over.[12]   Espinoza was not wearing a seat belt, and he was partially ejected out of the passenger-side window and crushed by the vehicle.[13]   The crash occurred shortly after noon in clear weather and dry road conditions.[14]   The medical examiner who performed Espinoza's autopsy opined that the cause of death was "[m]ultiple blunt force injuries," and marked the death

---

[9] Admin. Record at 242, 279.

[10] Id. at 181, 222.

[11] Id. at 217.

[12] Id.

[13] Id. at 115, 217.

[14] Id. at 216.

as an "Accident,"[15] which was also reflected on Espinoza's death certificate.[16]

B.   LINA's Investigation and Denial of Benefits

Plaintiff made a claim for benefits under the Policies, which LINA received on December 4, 2008.[17]   It reviewed Plaintiff's claim, Espinoza's death certificate, the police report, the toxicology report, the medical report, and the Policies, then on December 23, 2008, informed Plaintiff that the claim was not covered because it was not an "accident."[18]   LINA interpreted "accident" in the Policies to mean "a sudden, unforeseeable event,"[19] and stated that Espinoza "would have been aware of the risks involved in operating his vehicle while under the influence" because "every state in the nation has criminalized drunk driving," and therefore "[a]ll licensed motorists throughout the United States are on notice, by operation of law, of the state-declared prohibitions against drunk driving and its consequences."[20]   The letter stated that Espinoza had an "alcohol level of 0.35%," which it asserted was "more than

---

[15] Id. at 229.

[16] Id. at 232.

[17] Id. at 230.

[18] Id. at 207-08.

[19] Id. at 208.

[20] Id. at 208-09.

four times the maximum level of alcohol in which it is legal to operate a motor vehicle in the state of Kentucky."[21]   Because Espinoza "would have been aware of the risks involved in operating his vehicle while under the influence, his death was a foreseeable result of his actions and thus not an accident."[22]

LINA also relied upon the "self-inflicted injury" exclusion in the Policies as a reason for denial.  It noted that, by drinking and driving, Espinoza "placed his life and the lives of others in jeopardy" because "[i]t is commonly known that driving while intoxicated may result in death or bodily harm, as intoxication can lead to impaired judgment and decreased reflexes."[23]  His death was therefore "a result of intentionally self-inflicted injuries," and was excluded by the Policies.[24]

---

[21]  Id. at 208.  The toxicology report reviewed at this stage apparently contained only Espinoza's *urine* alcohol content, 0.35 percent, but not his *blood* alcohol content, which was 0.20.  *See* id. at 222; *cf*. id. at 181.  LINA therefore erroneously compared Espinoza's *urine* alcohol content to Kentucky's *blood* alcohol limit.

[22]  Id. at 209.

[23]  Id.

[24]  Id.

C.    Plaintiff's Appeal

Plaintiff retained counsel and appealed LINA's decision in January 2009.[25] Her letter of appeal also advised LINA to consider it "as notice of her claim to pursue litigation, damages, statutory penalties, and attorney fees if this claim is not immediately resolved."[26]   Her counsel pointed out that LINA's denial letter improperly compared Espinoza's *urine* alcohol content to Kentucky's legal *blood* alcohol limit for driving under the influence,[27] and subsequently submitted additional information consisting of affidavits of the investigating officer and medical examiner.[28]

The investigating officer asserted that he believed the curve on the road was dangerous for someone not familiar with the area, noting that he had investigated numerous accidents at the site.[29] He further stated that, based on his investigation, there was no evidence that Espinoza intentionally caused the accident, knew it would occur, or reasonably could have anticipated his death.[30]   The medical examiner similarly found no evidence that Espinoza intended

---

[25] Id. at 160.

[26] Id. at 161.

[27] Id.

[28] Id. at 112-115, 122-23.

[29] Id. at 114-115.

[30] Id. at 115.

his death, nor that he reasonably could have anticipated it, because "'driving under the influence' does not naturally and probably lead to the type of injuries" that resulted in his death.[31]

Plaintiff's counsel also submitted Texas and Kentucky state case law interpreting accidental death insurance policies in the context of alcohol-related automobile crashes, concluding that under the law of either state, Espinoza's crash would be considered an "accident" under the Policies.[32]

In response to these submissions, LINA informed Plaintiff that it was conducting a "home office review," which was "needed in order to interpret the documents we have received as they relate to the provision of this policy."[33]  The claims administrator assigned to the appeal forwarded Plaintiff's contentions to LINA's in-house counsel,[34] who responded with a five-page memo labeled "**PRIVILEGED & CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION.**"[35]  The memo opined that Plaintiff's relied-upon state law would be inapplicable to the interpretation of an ERISA policy governed exclusively by federal law: "The standard that claimant advances - one of natural and probable consequences - is not the standard utilized by federal

---

[31] Id. at 122.

[32] Id. at 103-06.

[33] Id. at 101.

[34] Id. at 75-76.

[35] Id. at 300 (emphasis in original).

7

courts applying the common law of ERISA."[36]   It then noted the absence of Fifth Circuit authority regarding "whether an ERISA insured's death that occurs while driving when intoxicated is an accident in the context of [an] accidental death benefit plan," and looked to decisions by the Fourth, Sixth, and Seventh Circuit Courts of Appeal as authority that, if LINA had discretion to make determinations under the Plan, it would not abuse that discretion by concluding that Espinoza's death was not an "accident" because "a reasonable person would foresee the likelihood of death or serious injury as a result of driving while intoxicated."[37]   The memo also stated that the officer's and medical examiner's affidavits were not persuasive, because they were based not "on the facts of the incident, but on their personal view of whether it was natural and probable that Mr. Espinoza could not reasonably have foreseen his death."[38]

LINA issued a letter to Plaintiff denying her appeal because:

Injury or death resulting from driving under the influence of alcohol is considered foreseeable and is not covered by the provisions of [the Policies].   Driving when intoxicated precludes a finding that a death is

---

[36] Id. at 302.

[37] Id. at 302-04 (citing and discussing Lennon v. Metro. Life Ins. Co., 504 F.3d 617 (6th Cir. 2007); Eckelberry v. ReliaStar Life Ins. Co., 469 F.3d 340 (4th Cir. 2006); Cozzie v. Metro. Life Ins. Co., 140 F.3d 1104 (7th Cir. 1998)).

[38] Admin. Record at 302.

> Accidental. As mentioned previously, the policy defini-
> tion of a Covered Accident requires that a loss not be
> foreseeable.[39]

In the letter, LINA again erroneously stated that Espinoza's "blood alcohol concentration was 0.35%," which it again asserted was "more than four times the threshold for presumed intoxication while driving in the state of Kentucky."[40]  Finally, the letter advised Plaintiff that she had exhausted all levels of administrative appeal.[41]

Pending are cross-motions for summary judgment.  Plaintiff asserts that LINA abused its discretion in denying her benefits, and further asserts that its denial was procedurally improper due to LINA's failure to disclose its in-house counsel's memo sooner. Defendants seek dismissal of all claims.

## II.  Legal Standards

### A.  Summary Judgment Standard

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[39] Id. at 98.

[40] Id.

[41] Id. at 99.

matter of law." FED. R. CIV. P. 56(c).[42]  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio

---

[42] Rule 56 was amended effective December 1, 2010 to state, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (effective Dec. 1, 2010).  While Defendants' motion was filed prior to the effective date of the new Rule 56, Plaintiff filed her motion *after* the amendments. Nonetheless, the amendments are meant only to "make the procedures more consistent with those already used in many courts," and "[t]he standard for granting summary judgment remains unchanged."  Id., cmt. 2010 Amendments.

Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

B.   ERISA Standard of Review

ERISA confers jurisdiction on federal courts to review benefit determinations by fiduciaries or plan administrators.  *See* 29 U.S.C. § 1132(a)(1)(B).  A plan claims administrator makes two general decisions when deciding whether to pay benefits: (1) finding the facts underlying the claim and (2) determining "whether those facts constitute a claim to be honored under the *terms* of the plan."  Schadler v. Anthem Life Ins. Co., 147 F.3d 388, 394 (5th Cir. 1998) (quoting Pierre v. Conn. Gen. Life Ins. Co./Life Ins. Co. of N. Am., 932 F.2d 1552, 1557 (5th Cir. 1991)) (emphasis in original).  The administrator's first decision, its fact finding, is always reviewed for abuse of discretion.  Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan, 493 F.3d 533, 537 (5th Cir. 2007).  The second determination, the

administrator's interpretation of the plan, is typically reviewed _de novo_, "[b]ut where, as here, a plan expressly confers discretion on the plan administrator to construe the plan's terms, the administrator's construction is reviewed for abuse of discretion." Id. at 537-38 (internal footnote omitted); _see also_ Firestone Tire & Rubber Co. v. Bruch, 109 S. Ct. 948, 956-57 (1989).  Because the parties agree that the Plan's Summary Plan Description conferred discretionary authority upon LINA,[43] both of its determinations are appropriately reviewed for an abuse of discretion.

When reviewing the administrator's second decision--interpretation and application of the plan language--for an abuse of discretion, the Fifth Circuit applies a two-step inquiry.  Stone v. UNOCAL Termination Allowance Plan, 570 F.3d 252, 257 (5th Cir. 2009).  First, the court examines whether the determination was legally correct; if so, there can be no abuse of discretion.  Id. If not legally correct, then the court proceeds to step two to decide whether the determination was an abuse of discretion.  Id.

An abuse of discretion occurs when "the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial."  Holland v. Int'l Paper Co. Retirement Plan, 576 F.3d 240, 246 (5th Cir. 2009) (internal quotation marks and citation omitted).  Such an abuse occurs "only where the plan administrator acted arbitrarily or capriciously," and a decision is

---

[43] _See supra_ n.7.

arbitrary when it is made "without a rational connection between the known facts and the decision or between the found facts and the evidence."  Id. (citing Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 214-15 (5th Cir. 1999)) (internal quotation marks omitted).  The decision need only "fall somewhere on a continuum of reasonableness--even if on the low end."  Corry v. Liberty Life Assur. Co. of Boston, 499 F.3d 389, 398 (5th Cir. 2007) (quoting Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 297 (5th Cir. 1999) (en banc), abrogated on other grounds by Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008)).  "Although we generally decide abuse of discretion based upon the information known to the administrator at the time he made the decision, the administrator can abuse his discretion if he fails to obtain the necessary information."  Salley v. E.I. DuPont de Nemours & Co., 966 F.2d 1011, 1015 (5th Cir. 1992).

In this case LINA operates under a conflict of interest; it is uncontested both that LINA has discretionary authority to make claims decisions and that it is responsible for paying benefits under the Plan.[44]  See Glenn, 128 S. Ct. at 2348 (2008).  Although the presence of a conflict is not determinative, and does not permit converting the "abuse of discretion" review into a more onerous standard of review, it is properly considered as a factor

---

[44] See Document No. 48 at 5.

13

in the overall analysis of LINA's denial of benefits.  *See* <u>Glenn</u>, 128 S. Ct. at 2350-52 (2008); <u>Holland</u>, 576 F.3d at 247-48 n.3.[45]

### III.  <u>Discussion</u>

For support of LINA's denial of benefits, Defendants rely on <u>Sanchez v. Life Insurance Co. of North America</u> and <u>Davis v. Life Insurance Co. of North America</u>, two unpublished Fifth Circuit decisions upholding LINA's denial of benefits where the insureds died in single-car crashes when driving while intoxicated. <u>Sanchez</u>, 393 F. App'x 229 (5th Cir. 2010) (unpublished op.); <u>Davis</u>, 379 F. App'x 393 (5th Cir. 2010) (unpublished op.).  In both of those cases, however, LINA's policies each defined "accident" as "[a] sudden, unforeseeable, external event."  <u>Sanchez</u>, 393 F. App'x at 233; <u>Davis</u>, 379 F. App'x at 395-96.  In sharp contrast to those cases, neither of the Policies nor the Plan in this case contains either that definition or any other definition of "accident." Thus, this case requires consideration of a similar but distinctly different question, namely, whether LINA abused its discretion in determining that Espinoza's death was not an "accident" under a policy written by LINA without inclusion of any definition of the term "accident."

---

[45] Plaintiff points to eight other cases where LINA has denied benefits, and asserts that it has obtained a potential gain of $2,867,000 from those denials and the denial presently at issue. Plaintiff, however, fails to point to any evidence that LINA's conflicts in the prior cases influenced LINA's benefit decisions.

While neither Accident Policy defines "accident," the Policies do exclude coverage for injuries from certain activities. These include:

- Intentionally self-inflicted injuries
- Travel or flight if the insured is a pilot or crew member
- Hang-gliding
- Parachuting (except for self-preservation), and
- Commission of a felony by the insured.[46]

Neither Policy excludes coverage for injury when driving an automobile while intoxicated.[47]

LINA in its claim administration used essentially the same definition for "accident" that is written into some of its accidental death policies--such as those in <u>Sanchez</u> and <u>Davis</u>--but which is not found in Espinoza's Policies, namely "a sudden,

---

[46] Admin. Record at 244, 281.

[47] The Sixth Circuit in a case similar to this stated the obvious:

> The solution for insurance companies . . . is simple: add an express exclusion in policies covering accidental injuries for driving while under the influence of alcohol, or for any other risky activity that the company wishes to exclude. Policyholders would thus be able to form reasonable expectations about what type of coverage they are purchasing without having to make sense of conflicting bodies of caselaw that deal with obscure issues of contractual interpretation.

<u>Kovach v. Zurich American Ins. Co.</u>, 587 F.3d 323, 338 (6th Cir. 2009).

unforeseeable event."[48]  Because Espinoza "would have been aware of the risks involved in operating his vehicle while under the influence, his death was a foreseeable result of his actions and thus not an accident."[49]  LINA denied Plaintiff's appeal for the same reason, and further because "[d]riving when intoxicated precludes a finding that a death is Accidental."[50]  In making that decision, LINA gave a legally incorrect definition to the term "accident" and, moreover, abused its discretion by applying a *per se* rule that death resulting from driving while intoxicated is never an accident, despite the absence of a policy exclusion so stating.

A.   Legally Incorrect Interpretation

Three factors bear upon whether an interpretation is legally correct: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." Stone, 570 F.3d at 258 (quoting Crowell v. Shell Oil Co., 541 F.3d 295, 312

---

[48] Admin. Record at 208.

[49] Id. at 209.

[50] Id. at 98.

16

(5th Cir. 2008)).[51]   The "most important" of these factors "is whether the administrator's interpretation was consistent with a fair reading of the plan." Id. (citing Crowell, 541 F.3d at 313).

Although LINA has consistently interpreted its accident policies--whether or not they define "accident"--to exclude from coverage drunk driving deaths,[52] its consistency does not save its interpretation in this case because it is not a fair reading of Espinoza's Policies in which "accident" is not a defined term. LINA's interpretation of the term "accident," in fact, is wholly inconsistent with the definition given that term by federal common law in the Fifth Circuit.

Writing for the Fifth Circuit in Todd v. AIG Life Insurance Co., Justice Byron White held that it was appropriate for the district court to conclude that:

> [F]or death under an accidental death policy to be deemed an accident, it must be determined (1) that the deceased had a subjective expectation of survival, and (2) that such expectation was objectively reasonable, which it is if death is not substantially certain to result from the insured's conduct.

---

[51] As neither party presents substantive argument on the third factor, it will not be addressed. See id. at 258 n.4.

[52] See, e.g., Sanchez, 393 F. App'x at 230-31; Davis, 379 F. App'x at 394-95; Moore v. Life Ins. Co. of N. Am., 708 F. Supp. 2d 597, 609-10 (N.D.W. Va. 2010); Danouvong ex rel. Estate of Danouvong v. Life Ins. Co. of N. Am., 659 F. Supp. 2d 318, 324-25 (D. Conn. 2009); McGillivray v. Life Ins. Co. of N. Am., 519 F. Supp. 2d 157, 162-63 (D. Mass. 2007).

47 F.3d 1448, 1456 (5th Cir. 1995).   The Fifth Circuit has also phrased the test in an alternative manner: "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct."   Schadler v. Anthem Life Ins. Co. 147 F.3d 388, 397 n.10 (5th Cir. 1998) (quoting Wickman v. Nw. Nat'l Ins. Co., 908 F.2d 1077, 1088 (1st Cir. 1990)).   Both cases demonstrate the Fifth Circuit's acceptance of the Wickman standard, as Judge Sarah Vance observed in her analysis of the circuit's precedents in Carter v. Sun Life Assur. Co., No. 05-2214, 2006 WL 1328821, at *6, *5-6 (E.D. La. May 11, 2006) ("[W]hile the Fifth Circuit has never squarely applied all three Wickman determinations to the same case, the Wickman approach is followed in this circuit and is the standard by which an administrator's determination is to be measured.").

The Wickman analysis requires that for a death to be considered "accidental," the insured must have had the subjective expectation of survival, and that expectation must have been objectively reasonable "from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." 908 F.2d at 1088.   In the more typical case where there is insufficient evidence of the insured's actual expectations, a purely objective analysis is undertaken as "a good proxy for actual

18

expectation": the death is not an accident if "a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct."  Id.

LINA's interpretation eschews the Wickman approach to defining accident, and is therefore legally incorrect.  In Wickman, the starting point was the actual expectation of the insured, limited only by excluding "patently unreasonable" expectations from the definition of "accident," which equates to situations where death or serious injury is "highly likely."  This compares favorably to the dictionary definition of "accident": "an unforeseen and unplanned event or circumstance," or "lack of intention or necessity."  WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY at 49 (1990). LINA's interpretation, on the other hand, does not focus the inquiry on what is *actually* expected or foreseen by the insured, tempered only by patently unreasonable expectations, but rather, on what is foresee*able*--that is, *capable* of being foreseen.  Further, it does not ground this interpretation in the alternative objective analysis of Wickman, asking *from the perspective of the insured* whether death or serious injury is *"highly likely"* to occur, not merely asking whether death or serious injury is "foreseeable."  In short, LINA's interpretation of "accident" excludes from its bounds not just the "patently unreasonable" expectation, Wickman, 908 F.2d at 1087, but anything that is merely "foreseeable."  This goes well

19

beyond the limited exception to an insured's actual expectations
(or a "proxy" thereof) established by <u>Wickman</u> and followed by the
Fifth Circuit in <u>Todd</u> and <u>Schadler</u>.[53]   Indeed, there is much
persuasive authority pointing to a variety of examples that are
commonly considered "accidents" but which would be excluded from

---

[53] *See* <u>Todd</u>, 47 F.3d at 1456 (noting the inapplicability of
cases cited by the plan administrator to support its interpretation
of "accident," because "[u]nder those cases, however, it need be
only foreseeable that death 'could' result, not that death was
'highly likely.'"); *see also* <u>LaAsmar v. Phelps Dodge Corp. Life,
Accidental Death & Dismemberment and Dependent Life Ins. Plan</u>, 605
F.3d 789, 809 (10th Cir. 2010) (under *de novo* review, rejecting the
plan administrator's proposed interpretation of "accident" as
excluding a "reasonably foreseeable" injury because, in part,
<u>Wickman</u> "did not apply a reasonable foreseeability test, but
instead asked whether the injuries or loss at issue was 'highly
likely to occur'"); <u>Kovach v. Zurich Am. Ins. Co.</u>, 587 F.3d 323,
336-37 (6th Cir. 2009) (noting "the varying interpretations of the
word 'accidental'" adopted by district courts in the Sixth Circuit
alternately referencing the "reasonably foreseeable" and "highly
likely" standards, and adopting the "key holding" in <u>Wickman</u>--
requiring an inquiry into "whether a reasonable person, with
background and characteristics similar to the insured, would have
viewed the injury as highly likely to occur as a result of the
insured's intentional conduct" to determine whether or not the
injury was an "accident"); <u>King v. Hartford Life and Accident Ins.
Co.</u>, 414 F.3d 994, 1002, 1003-04 (8th Cir. 2005) (en banc)
(remanding benefits decision to administrator because the
"reasonably foreseeable" standard applied in its denial letter was
not the same as the <u>Wickman</u> standard that it "consistently . . .
maintained in litigation" was the proper way to interpret
"accident"); *see also* <u>Loberg v. Cigna Group Ins.</u>, No. 8:09CV280,
2011 WL 612059, at *6 (D. Neb. Feb. 10, 2011) (noting that <u>King</u>
"makes clear that a distinction between the two standards (at least
in the Eighth Circuit) exists"); <u>McGillivray</u>, 519 F. Supp. 2d at
165 (same); <u>Carter</u>, 2006 WL 1328821, at *6 (finding "unreasonable
and legally incorrect" the plan administrator's interpretation of
"accident" to exclude coverage when injury or death is "reasonably
foreseeable and . . . the natural and probable result" of the
insured's conduct, because the difference between that standard and
<u>Wickman</u> "is material").

being so regarded if events that are merely "foreseeable" or "reasonably foreseeable" were not considered "accidents."[54]

Furthermore, LINA's interpretation runs contrary to the provisions of the Policies, which specifically pay *an additional* 10 percent of the insured's benefits if he or she "dies as a result of an automobile accident while wearing a properly fastened, original, factory-installed seatbelt."[55]   It is certainly "foreseeable" that one not wearing a seatbelt--such as Espinoza--may die in a car crash, which, by LINA's definition, would by itself render that person's death not an "accident."  Yet, the Policies specifically provide for *additional* coverage for an insured who dies while wearing a seatbelt, implying that one who does *not* wear a seatbelt is covered at the basic amount.  *See* LaAsmar, 605 F.3d at 807 ("To some degree, the language of the Plan at issue here providing for the possibility of additional benefits

---

[54]*See, e.g.*, Kovach, 587 F.3d at 335-36 (crash resulting from driving while text messaging or driving while fatigued); Lennon v. Metro. Life Ins. Co., 504 F.3d 617, 630 (6th Cir. 2007) (Clay, J., dissenting) (crash after driving "another hour" on a cross-country trip "after an 18 hour day behind the wheel," or while driving 89 miles per hour in a 70 mph zone, or death or serious injury when bungee jumping); King, 414 F.3d at 1008 (Bright, J., concurring) (falling after standing on a shaky stool to reach something on a high shelf, electrocution of a lineman working atop an electricity pole, a car crash resulting from speeding one's pregnant wife to the hospital); Sanchez v. Life Ins. Co. of N. Am., 704 F. Supp. 2d 587, 596 n.18 (W.D. Tex. 2009) (injuries resulting from standing on a ladder, driving an automobile, playing basketball); Danouvong, 659 F. Supp. 2d at 328 & n.6 (crash when driving a car).

[55] Admin. Record at 37, 66.

if the insured chose to wear a seat belt suggests that an insured's failure to take precautions against obvious dangers would not preclude AD & D benefits under this policy.").

In sum, LINA made a legally incorrect determination of the undefined term "accident" as it is used in the Accident Policies and Plan that covered Espinoza.

B.   <u>Abuse of Discretion</u>

LINA also abused its discretion in denying benefits under the Accident Policies without sufficient evidence in the administrative record to support its determination and by its application of what effectively is a *per se* rule that drunk driving deaths can never be an "accident" under a policy that contains no exclusion for drunk driving.

Unlike the instant case, <u>Sanchez</u> and <u>Davis</u> involved evidence supporting LINA's decision *in addition* to the insured's blood alcohol content.  In <u>Davis</u>, the administrative record contained a toxicologist's findings; the Fifth Circuit therefore held that LINA's determination was reasonable "[c]onsidering the toxicologist's findings as to the effects of such severe intoxication." <u>Davis</u>, 379 F. App'x at 396.  Similarly, in <u>Sanchez</u>, the administrative record contained eyewitness accounts that the insured's vehicle "swerved sharply in the road" before rolling over; a forensic consultant's opinion that a person with the

insured's blood alcohol content would have "'poor judgment,
increased reaction time, muscle incoordination, loss of visual
acuity, [ ] increased risk taking' and be unable to drive safely";
and the consultant's citation to "volumes of references regarding
the effects of alcohol producing impairment regardless of
tolerance."  Sanchez, 393 F. App'x at 233.[56]

Here, on the other hand, the administrative record is entirely
devoid of any evidence--other than Espinoza's blood alcohol content
as compared to the legal limit in Kentucky--regarding whether the
crash was foreseeable.[57]  In fact, LINA erroneously garbled even
this single piece of evidence: rather than comparing Espinoza's

---

[56] Even this evidence offered only weak support of LINA's case
in Sanchez.  The Fifth Circuit noted that this constituted a
"lesser amount" of evidence "on the issue of whether or not a crash
in these circumstances was an 'unforeseeable' event" relative to
the evidence on causation of the crash, and also stated that
"[a]dditional evidence regarding the foreseeability of a fatal
crash resulting from driving under the influence would have
strengthened LINA's decision."  Id. at 233 & n.3.

[57] Defendants request that the Court take judicial notice of
a "'Kentucky Safety Facts' tip sheet promulgated by the Kentucky
Office of Highway Safety on its official website," which is a
"public record."  Document No. 44 at 7.  The "Safety Facts" tip
sheet on a web site is not a part of the administrative record, and
does not fall within the limited exceptions for evidence not within
the administrative record that may be considered when reviewing a
plan administrator's denial of benefits.  See Vega v. Nat'l Life
Ins. Servs., Inc., 188 F.3d 287, 299 (5th Cir. 1999) (en banc),
abrogated on other grounds by Metropolitan Life Ins. Co. v. Glenn,
128 S. Ct. 2343 (2008) (noting the limited exceptions permitting
evidence outside the administrative record: evidence "related to
either interpreting the plan," such as "how an administrator has
interpreted the terms of the plan in other instances," and evidence
"explaining medical terms and procedures relating to the claim").

*blood* alcohol content to Kentucky's legal limit, LINA cited his *urine* alcohol concentration and compared it to Kentucky's legal limit for *blood* alcohol concentration. LINA repeated this error in its appeal denial letter, *after* Plaintiff's attorney had specifically pointed out LINA's error in its first denial letter. Moreover, instead of considering any other facts specific to the case, LINA effectively adopted a stance that a crash resulting from any blood alcohol content over the legal limit is *per se* foreseeable, and therefore *per se* not an "accident." For instance, its internal notes reveal that LINA presumed Espinoza's awareness of the dangers of drunk driving (and therefore the foreseeability of his own death resulting therefrom) *unless* something in the administrative record indicated otherwise:

> There is nothing in file to support fact that Mr. Espinoza was not aware of the risks involved in operating his vehicle while intoxicated.  Therefore, his death was a foreseeable result of his actions and thus not an accident.[58]

As already observed, LINA's initial denial letter cited only to Espinoza's urine alcohol content, and otherwise asserted that "every state in the nation has criminalized drunk driving," which therefore put "[a]ll licensed motorists throughout the United States . . . on notice, by operation of law, of the state-declared

---

[58] Admin. Record at 76.

prohibitions against drunk driving and its consequences."[59] Finally, LINA's denial of Plaintiff's appeal flatly states the *per se* rule it applied in this case:

> Having reviewed the available record, indications are that Mr. Espinoza was driving under the influence of alcohol at the time of this motor vehicle crash.  This resulted in his death.  Injury or death resulting from driving under the influence of alcohol is considered foreseeable and is not covered by the provisions of [the Policies]. *Driving when intoxicated precludes a finding that a death is Accidental*.[60]

No circuit court considering drunk driving crashes has approved a claims administrator's use of a *per se* rule in the context of ERISA accidental death policies.  To the contrary, the courts consistently have expressed disapprobation for the use of such a rule.  *See* LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins. Plan, 605 F.3d 789, 802 (10th Cir. 2010) (noting that "[c]ourts have consistently rejected such a per se rule, as would we," and collecting cases); *see also* Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 91 & n.9 (1st Cir.), *cert. denied*, 129 S. Ct. 636 (2008) (rejecting "categorical determination that all alcohol-related deaths are per se accidental or nonaccidental" by noting that "we have been careful to explain that the proper approach is fact-specific and that the decedent's

---

[59] Id. at 209.

[60] Id. at 98 (emphasis added).

25

degree of intoxication is particularly probative," and further reviewing the evidence relied upon by the administrator--including an internal medical department report, online resources, and a university police handbook--that constituted a "well-developed record of the severe impairment that would be expected from Mr. Stamp's level of intoxication"); Lennon v. Metro. Life Ins. Co., 504 F.3d 617, 619, 622, 624 (6th Cir. 2007) (noting that under the particular facts, including the insured's "extremely high blood-alcohol content" of 0.321, the administrator reasonably determined that the insured's death was not an accident, but declining to reach "the question of whether a fiduciary can reasonably deny 'accidental' benefits for injury that results from any negligent or any illegal behavior, or from driving while only somewhat impaired");[61] accord Eckelberry v. Reliastar Life Ins. Co., 469 F.3d 340, 345 (4th Cir. 2006); Cozzie v. Metro. Life Ins. Co., 140 F.3d 1104, 1106, 1110 (7th Cir. 1998).[62]

---

[61] In a later case, the Sixth Circuit characterized the Lennon majority as refusing "to impose a blanket standard allowing insurers to consider injuries resulting from any wreck in which the driver is intoxicated as nonaccidental." Kovach v. Zurich Am. Ins. Co., 587 F.3d 323, 331 (6th Cir. 2009). Indeed, Kovach distinguished Lennon on its facts, including the "most obvious disparity" between the degree of intoxication (0.321 versus 0.148 blood alcohol content), and concluded that the administrator abused its discretion. Id. at 331, 338.

[62] District courts have followed the same reasoning. See, e.g., Danouvong, 659 F. Supp. 2d at 326 (holding that the plan administrator abused its discretion where it "concluded that the crash was foreseeable from the fact that Mr. Danouvong's BAC was 0.26 percent and its ipse dixit pronouncements, without citation

The above cases are persuasive, particularly in light of the Fifth Circuit's instructions that "the administrator can abuse his discretion if he fails to obtain the necessary information," Salley, 966 F.2d at 1015, and that an administrator abuses its discretion if its "decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." Holland, 576 F.3d at 246 (internal quotation marks and citation omitted). Accordingly, LINA abused its discretion in determining that Espinoza's death was not an "accident."

C.   Award

For the foregoing reasons, Plaintiff is entitled to an award of the Policies' benefits due under the Plan, plus interest.[63]

---

either to the record or to authority, that '[t]he hazards of driving while intoxicated are widely known and publicized' and that '[i]t is also well-known in the general public that driving while intoxicated could result in bodily harm or death'"); Loberg v. Cigna Group Ins., No. 8:09CV280, 2011 WL 612059, at *7 (D. Neb. Feb. 10, 2011) ("Plan administrators may not utilize a categorical rule that alcohol-related crashes are not accidents.").

[63] Although ERISA does not expressly provide for an award of prejudgment interest to prevailing beneficiaries, it is within the Court's discretion to award prejudgment interest here because that remedy is not precluded by ERISA and in fact furthers "the congressional policies embodied in the act." Hansen v. Cont'l Ins. Co., 940 F.2d 971, 984 n.11 (5th Cir. 1991); see also Roig v. Ltd. Long Term Disability Program, No. CIV.A.99-2460, 2000 WL 1146522, at *15 (E.D. La. Aug. 4, 2000) (Vance, J.). An award of prejudgment interest is appropriate due to Plaintiff's loss of use of insurance proceeds to which she was entitled, and also to encourage plan administrators to resolve disputes quickly and fairly without recourse to litigation. See Roig, 2000 WL 1146522, at *15 (holding same).

Defendants have asked for remand to LINA for further review if the Court "determines the claims decision was not procedurally correct."[64]  That is not the Court's decision; to the contrary, this decision is based on LINA's abuse of its discretion, not on a procedural defect.  "If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the part of the administrator, award the amount due on the claim and attorneys' fees."  Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 302 (5th Cir. 1999) (en banc), abrogated on other grounds by Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008).  While remand may be justified in "some special circumstances," the Fifth Circuit in Vega "decline[d] to remand to the administrator to allow him to make a more complete record" on whether the insured's misrepresentation in seeking coverage was "material," where the record already developed contained insufficient evidence to support a conclusion of materiality.  Id. at 302 n.13.  The court sought "to encourage each of the parties to make its record before the case comes to federal court," and also noted that "it would be unfair to allow the administrator greater opportunity at making a record than the claimant enjoys."  Id.

Because LINA twice had the opportunity directly to address the only question at issue--whether Espinoza's death was an "accident"

---

[64] Document No. 54 at 15.

under the Policies--and because both times it applied a legally incorrect definition to the undefined term "accident," and further made decisions without sufficient evidence to support its determination, remand is not appropriate. *Cf.* Schadler v. Anthem Life Ins., 147 F.3d 388, 398 (5th Cir. 1998) (holding that remand was appropriate where the plan administrator's denial was based only upon the erroneous conclusion that the plaintiff was not eligible for policy coverage; the administrator thus "never had occasion to exercise any discretion to interpret the terms of the Plan," or to make a full development of relevant facts and a decision thereon).

However, Plaintiff has established entitlement to an award only from the Plan, not from all named Defendants. *See* 29 U.S.C. § 1132(d)(2) ("Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."). Plaintiff's motion will therefore be granted with respect to the Plan, but denied as to all other defendants.[65]

---

[65] *See* Williams v. Cent. Cartage Co., 149 F.3d 1173, 1998 WL 412984, at *1 (5th Cir. 1998) (unpublished op.) ("In the absence of evidence of a breach of fiduciary duty, a judgment for the amount of benefits denied is against an employee benefit plan . . . ." (internal footnote omitted)). Although Plaintiff alludes to LINA's alleged breach of fiduciary duty in the context of arguing for greater weight to be given to consideration of its conflict of

Remaining to be determined are whether attorney's fees should be awarded to Plaintiff under 29 U.S.C. § 1132(g)(1) and whatever remaining cause of action, if any, Plaintiff may have against the other Defendants Becon and LINA.

## IV.  Order

Based on the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment (Document No. 23) is DENIED.  It is further

---

interest, *see* Document No. 1 at 8, Document No. 48 at 19, she has made no showing or argument regarding a breach of fiduciary duty claim under ERISA, and indeed cannot in light of her clear request for recovery of benefits wrongfully denied, a claim under 29 U.S.C. § 1132(a)(1)(B).  Document No. 1 at 8; *see* Rhorer v. Raytheon Eng'rs and Constructors, Inc., 181 F.3d 634, 639 (5th Cir. 1999) ("Accordingly, because § 1132(a)(1)(B) affords Rhorer an avenue for legal redress, she may not simultaneously maintain her claim for breach of fiduciary duty." (citing and discussing Varity Corp. v. Howe, 116 S. Ct. 1065, 1077-79 (1996); Tolson v. Avondale Indus., Inc., 141 F.3d 604, 610-11 (5th Cir. 1998))).

Further, although the Fifth Circuit has held that an employer was properly named as a defendant (thereby implying the *possibility* of recovery), it did so under the specific facts where the plan had "no meaningful existence separate from [the employer] because the Voucher Plan is funded by the general assets of the partnership," and where "it was indisputably [the employer's] decision" to deny the plaintiffs' benefits. Musmeci v. Schwegmann Giant Super Mkts., Inc., 332 F.3d 339, 350 (5th Cir. 2003).  Plaintiff has made no such showing of intertwining between any other defendant and the Plan, and therefore has failed to show her entitlement to summary judgment against those other defendants. *Cf.* Walker v. Kimberly-Clark Corp., No. 1:08CV146-SA-JAD, 2010 WL 611007, at *7 (N.D. Miss. Feb. 17, 2010) (dismissing a defendant upon its motion where the plaintiff "failed to bring forth any evidence that these entities are so intertwined that the employer is the true party in interest").

ORDERED that Plaintiff Debra Firman's Cross-Motion for Summary Judgment (Document No. 53) is GRANTED in part, and Plaintiff Debra Firman shall have and recover of and from Defendant Becon Personal Accident Insurance Plan/502 the benefits payable for the accidental death of Gilberto Espinoza under LINA Group Accident Policy OK 826455 and LINA Voluntary Personal Accident Insurance Group Policy OK 822833, which accidental death benefits the Court understands from the pleadings total $210,000, plus pre-judgment interest on these benefits from the dates they were due to be paid until the date of Final Judgment.  Plaintiff's Cross-Motion for Summary Judgment is otherwise DENIED with respect to Defendants Becon Construction Company, Inc., and Life Insurance Company of North America.  It is further

ORDERED that within fourteen (14) days after the entry of this Order the parties shall jointly provide to the Court an agreed calculation setting forth the amount of the benefits and the pre-judgment interest due under this Order for inclusion in the Court's Final Judgment.  It is further

ORDERED that within fourteen (14) days after the entry of this Order the parties' counsel shall personally confer in a good faith attempt to reach agreement on whether Plaintiff is entitled to recover attorney's fees and expenses and, if so, to reach an agreement upon the amount of reasonable and necessary attorney's fees and expenses that Plaintiff is entitled to recover, if any.

31

The parties shall promptly advise the Court of that agreement.  If good faith efforts to reach agreement on attorney's fees should fail, then Plaintiff's attorney may file his affidavit for attorney's fees and expenses and supporting material within twenty-one (21) days after the date of this Order, together with a brief showing entitlement to the same, and Defendant may file a controverting affidavit and supporting materials, and a brief setting forth Defendant's position, within ten (10) days after having been served with Plaintiff's affidavit and supporting materials.

It is SO ORDERED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 15th day of April, 2011.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE